UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RENEE GABET AND<br>ANNIE OAKLEY ENTERPRISES, INC.,<br>　　　Plaintiffs,<br><br>　　　　　v.<br><br>AMAZON.COM, INC., and<br>JOHN DOES 1-50.<br>　　　Defendant. | )<br>)<br>)　CASE NO.<br>)<br>)<br>)　JURY TRIAL DEMANDED<br>)<br>)<br>) |

## COMPLAINT FOR WILLFUL AND INTENTIONAL TRADEMARK INFRINGEMENT AND RELATED CLAIMS

Plaintiffs, Renee Gabet and ANNIE OAKLEY ENTERPRISES, INC. (collectively "Plaintiffs") file this Complaint against Defendants, Amazon.com, Inc., and John Does 1-50 (collectively "Defendants"), by counsel, and allege as follows:

### NATURE OF ACTION, JURISDICTION AND VENUE

1.　This is an action for trademark infringement, false designation of origin, and unfair competition, under *inter alia*, the Lanham Act, 15 U.S.C. §§ 1051, *et seq*.; and state common law.

2.　This Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.  In addition, jurisdiction exists under 28 U.S.C. § 1332.  The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1367(a) and 1338(b).

3.　Venue is proper under, *inter alia*, 28 U.S.C. §§ 1391 and 1400 in that, on information and belief, a substantial part of the events giving rise to this action occurred

in this judicial district, and Defendants or their agent(s) are subject to personal jurisdiction in the district.

4.    This Court may exercise personal jurisdiction over the Defendants because of Defendants' systematic contacts with and purposeful availment of this forum. Specifically, and without limitation, Amazon and the other Defendants sell, offer for sale, and market the subject infringing goods in this judicial district directly, through websites and storefronts beginning having URLs that begin with www.amazon.com or similar URLs for foreign countries.

## THE PARTIES

5.    Plaintiff Renee Gabet ("Gabet") is seventy year old grandmother residing in Ligonier, Indiana who owns Annie Oakley Enterprises, Inc. ("Annie Oakley"), an Indiana corporation she formed in 1981.

6.    Defendant Amazon.com, Inc. ("Amazon") is the world's most prolific infringer of intellectual property rights and "the most valuable public company in the world" with a value of **$1,629,000,000,000.** Central to Amazon's strategy for dominating the online marketplace is its calculated decision to willfully infringe the intellectual property rights of others with impunity and turn a blind eye to whether the products sold through or by it infringe the intellectual property rights of others.

7.    Amazon has the distinction of being the first and only U.S. company to be added to the U.S. Trade Representative's "**Notorious Market List**." The list is reserved for the worst online markets and offenders of counterfeit product sales, copyright piracy, and trademark infringement.

8.      Upon information and belief, Amazon is organized under the laws of the State of Washington and has its principal office street address at 410 Terry Ave. N, Seattle, Washington 98109-5210.

9.      Defendants John Does 1-50 are persons or entities that from whom Amazon acquires infringing products to list, advertise and sell. Amazon knows the true identity of these infringing co-conspirators but their identities are unknown to Plaintiffs. Plaintiffs intend to file an amended complaint identifying them when Amazon provides their identities.

### FACTUAL ALLEGATIONS

10.     After years of training and certification in perfumery in Paris and Milan from the industry's most renowned perfume industry luminaries, Pierre Bourdon and Pierre Dinand, Gabet began designing proprietary fragrances for Annie Oakley. Gabet and Annie Oakley make and sell a variety of health and beauty products like perfumes, essential oils, lotions, oils, shampoos, conditioners, bath salts . The popularity of these products is driven by their unique fragrances, which are propriety blends designed by Gabet and sold by Annie Oakley.

11.     Annie Oakley is the only perfumery in the United States with all operations (R&D, production, packaging and distribution) under one roof. As a result, Annie Oakley designated as one of the "Top 15" destinations on the US Route 6 Highway," and was selected by VisitIndiana.com as a "Must Visit" "20 IN 20" "Uniquely Indiana Attraction" because it "welcomes visitors from around the country, all drawn by their sense of smell!" Gabet, Annie Oakley and their products have also been featured on nationwide news broadcasts on television and the Internet. Annie Oakley

sells its products at its Ligonier storefront, and through its world-wide network of over 1,000 dealers, and over the Internet.

      12.     Gabet filed over sixty federal trademark applications for the names of her proprietary fragrances and she owns at least these federal registrations:

| Serial Number | Reg. Number | Word Mark |
|---|---|---|
| 88484636 | 6110854 | DON'T TOUCH ME |
| 88222276 | 5794351 | SAGEBRUSH |
| 76703437 | 4084138 | GYPSY COWGIRL |
| 76218752 | 2549753 | GOLDEN MEDITATION |
| 76218649 | 2549752 | KICK BACK |
| 76705232 | 4014223 | ANNIE OAKLEY |
| 76683081 | 3510209 | SAGEBRUSH |
| 76564938 | 2939334 | ANNIE OAKLEY |
| 76515185 | 3313020 | RIDE THE SPIRIT |
| 76515184 | 3303058 | SIMPLY LOVE |
| 76472965 | 3213753 | TRUE HAPPINESS |
| 76469747 | 3218377 | WILD WEST |
| 76218648 | 2549751 | NATURE'S HIGH |
| 76218646 | 2552367 | SECOND WIND |
| 75669286 | 2489881 | ANNIE OAKLEY |
| 75676067 | 2488420 | ECLECTIC REMEDIES |
| 75217811 | 2547492 | SUNSET |
| 74802837 | 2024708 | SUNSET |
| 74463749 | 2105642 | ANNIE OAKLEY |

| Serial Number | Reg. Number | Word Mark |
|---|---|---|
| 74463741 | 2155071 | ANNIE OAKLEY |
| 74420379 | 1836520 | INDIAN MUSK |
| 74420377 | 1867914 | STAMPEDE |
| 74420376 | 1864483 | ANNIE |
| 74049078 | 1792108 | MORNING DEW |

13.     Most of Gabet's registrations became "incontestable" under the Lanham Act when the US Trademark Office accepted Declarations for them under 15 USC § 1065.

14.     Annie Oakley is the sole licensee of those trademarks and has paid Gabet royalties for those rights.  Gabet owns Annie Oakley, she controls the quality of the products sold by it.

15.     Annie Oakley has continuously used its trademarks in nearly every conceivable possible way, including on labels for products, on small free sample bottles of products, in catalogs it has distributed to thousands of customers and dealers in every state in the US and multiple foreign countries, on advertising inserts placed into boxes shipped to dealers and customers containing other products, on shelf signs and "point of purchase cards" at Annie Oakley's store, on its webpage, on Facebook, on Instagram, in Internet ads, in Internet URLs, and in SEO (search engine optimization).  Annie Oakley's use of the trademarks in Internet URLs allows Internet search engines like Google, Bing and DuckDuckGo to more efficiently direct Internet users that do text searches for Plaintiffs' products.

16.    Others in the marketplace respect Gabet's rights in her trademarks and stop selling infringing products when they were informed of the trademarks – with one major exception – **Amazon**. Unlike every other business Gabet contacted that has infringed one of Gabet's trademarks, whether innocently or intentionally, Amazon alone has consistently failed to take prompt action to cease its infringing activity.

17.    For example, Amazon maintains a so-called "infringement reporting portal" that it claims others can use to report claims of trademark infringing. In 2018, Gabet notified Amazon of several infringing products Amazon was selling. Amazon did not stop selling the infringing products. So Gabet notified Amazon in writing a second time, and a third time, and a fourth time. Each and every time, Gabet received a form email back from Amazon, acknowledging receipt, but each time Amazon took no action and failed to stop selling the infringing products. Ultimately, Gabet was forced to file an infringement suit against the co-infringer that supplied Amazon with the infringing contraband. That suit resulted in the supplier paying Gabet $300,000 and ceasing its supply of products to Amazon. While this litigation cost Gabet over $100,000, Amazon got off scot-free and never had to disgorge any of its ill-gotten gains from selling the infringing products.

18.    On at least four other occasions, Gabet notified Amazon in writing of infringing products it was selling. Every time, Amazon failed to promptly stop selling the infringing products, and forced Gabet to pursue costly litigation. Several times, Amazon stopped selling for a few days, then only to resume selling, claiming the resumption was "inadvertent."

19.    After repeated attempts by Gabet to get Amazon to stop infringing. Eventually, Amazon asked for a list of all of Gabet's trademarks, the time period they were used, and the products they were used on.

20.    To ensure there was absolutely no confusion about Gabet's trademark rights, she gave Amazon a list including the following marks:

| Mark | Time Period | Category of Products |
|---|---|---|
| MORNING DEW | This Mark has been used throughout the entire relevant time period. | *International Class 3 products and Personal care and body care products.* |
| ANNIE | This Mark has been used throughout the entire relevant time period. | *International Class 3 products and Personal care and body care products.* |
| STAMPEDE | This Mark has been used throughout the entire relevant time period. | *International Class 3 products and Personal care and body care products.* |
| INDIAN MUSK | This Mark has been used throughout the entire relevant time period. | *International Class 3 products and Personal care and body care products.* |
| SUNSET | This Mark has been used throughout the entire relevant time period. | *International Class 3 products and Personal care and body care products.* |
| NATURE IN A BOTTLE | This Mark was used during the relevant time period through | *International Class 3 products and Personal care and* |

| | approximately 2018. | *body care products.* |
|---|---|---|
| ANNIE OAKLEY | This Mark has been used throughout the entire relevant time period. | *International Class 3 products and Personal care and body care products.* |
| ECLECTIC REMEDIES | This Mark has been used throughout the entire relevant time period. | *International Class 3 products and Personal care and body care products.* |
| SECOND WIND | This Mark has been used throughout the entire relevant time period. | *International Class 3 products and Personal care and body care products.* |
| NATURE'S HIGH | This Mark has been used throughout the entire relevant time period. | *International Class 3 products and Personal care and body care products.* |
| KICK BACK | This Mark has been used throughout the entire relevant time period. | *International Class 3 products and Personal care and body care products.* |
| GOLDEN MEDITATION | This Mark has been used throughout the entire relevant time period. | *International Class 3 products and Personal care and body care products.* |
| WILD WEST | This Mark has been used throughout the entire relevant time period. | *International Class 3 products and Personal care and body care products.* |
| TRUE HAPPINESS | This Mark has been used throughout the entire | *International Class 3 products and* |

| | relevant time period. | *Personal care and body care products.* |
|---|---|---|
| SIMPLY LOVE | This Mark has been used throughout the entire relevant time period. | *International Class 3 products and Personal care and body care products.* |
| RIDE THE SPIRIT | This Mark has been used throughout the entire relevant time period. | *International Class 3 products and Personal care and body care products.* |
| SAGEBRUSH | This Mark has been used throughout the entire relevant time period. | *International Class 3 products and Personal care and body care products.* |
| GYPSY COWGIRL | This Mark has been used from at least March 7, 2011 through the present. | *International Class 3 products and Personal care and body care products.* |

21. Thse Registrations are *prima facie* evidence of the validity of the Registrations, Gabet's ownership of the registered marks, and her exclusive right to use the marks in commerce in connection with the goods specified in the Registrations. The Registrations are also constructive notice of Gabet's ownership of the marks.

22. Despite Amazon's receipt of this list, and other lists of infringing products it was selling provided by Gabet, Amazon did not take any prompt action to stop selling products that infringed Gabet's trademarks.

23.  Amazon continues to directly infringe, to contribute to the infringement by
others, and to induce others to infringe Gabet's trademarks and federal
registrations.

24.  By way of example, after having been expressly informed of Gabet's trademarks,
Amazon manufactured, copied, reproduced, sold, offered for sale, publicly
displayed, distributed, and/or imported at least the following products that
infringe Gabet's trademarks:





| **SAGEBRUSH** | | |
|---|---|---|
| Flower Essence Services Dropper Herbal Supplements, Sagebrush, 1 Ounce<br>**1 Fl Oz (Pack of 1)**<br>★★★★☆ ⌄ 60<br><br>$13⁹³ ($13.93/Ounce) | Flower Essence FES Quintessentials Sagebrush Supplement Dropper -- 0.25 fl oz<br>**0.25 Ounce**<br>★★★★★ ⌄ 1<br><br>$10⁷⁴ ($42.96/Ounce) | |
| **SUNSET** | | |
| Sponsored ⓘ<br>EiR NYC Sunset Oil \| Premium After Sun Hydrating Body Lotion \| Soothe and Moisturize with Vitamin-e Aloe Vera...<br>**8 Ounce**<br>★★★★★ ⌄ 9<br><br>$35⁰⁰ ($4.38/Ounce) | Bath & Body Works SUNSET GLOW Travel Size Fine Fragrance Mist 3 Fluid Ounce (2020 Limited Edition)<br>**3 Fl Oz (Pack of 1)**<br>★★★★☆ ⌄ 630<br><br>$17⁸⁹ ($5.96/Fl Oz) | Coach COACH Dreams Sunset EDP<br>**2 Fl Oz**<br>★★★★☆ ⌄ 58<br><br>$82⁰⁰ ($41.00/Fl Oz) |





**Bath and Body Works SUNSET GLOW - Duo Gift Set - Body Cream and Fine Fragrance Mist - Full Size**

2 Piece Set

★★★★⯪ ~ 109

$30⁰⁰ ($30.00/Count)

**GLAMOUROUS SUNSET - Eau De Parfum - Perfume for Women - 100ML 3.4 FL OZ**

3.4 Ounce

$9⁹⁹ ($9.99/Fl Oz)

**Avon Haiku SUNSET Eau De Parfum Spray 1.7 Fl Oz (Box imperfections)**

★☆☆☆☆ ~ 1

$50⁰⁰ ($50.00/Fl Oz) $67.99




Bath and Body Works - Sunset Glow - Daily Trio - Fall 2020 - Shower Gel, Fine Fragrance Mist & Body Lotion



Sunset Glow Shower Gel

$16⁷⁵

Get Fast, Free Shipping with

## MORNING DEW



Morning Dew Serum

1 option

New

$15⁷⁵
($31.50 / Fl Oz)

$4.49 delivery January 19 - February 3. Details



**Yardley London - Morning Dew Perfumed Talc for Women, 250g**

**8.81 Ounce (Pack of 1)**

★★★★⯪ ~ 2,500

$7⁸⁴ ($0.89/Ounce) $9.06



**Yardley London Morning Dew Perfumed Talc for Women, 250g**

★★★★⯪ ~ 6

$11⁵¹ ($11.51/Count)



Yardley London - Morning Dew with London Mist And Imperial Jasmine Refreshing Body Spray Deo for...

$39⁹⁸ ($39.98/Count)



ROBUST ROOTS MORNING DEW REPAIR MIST

6 Fl Oz

★★★★★ ˅ 1

$23⁹⁵ ($3.99/Fl Oz)



Perfume for Women 5 oz Refreshing Body Spray decoration in beautiful life Yardley Morning Dew Perfu...

$21⁴⁹ ($4.30/Fl Oz)



Yardley London - Morning Dew Refreshing with London Mist Body Spray Deo for Women150ml set of 2pc

$29⁹⁸ ($29.98/Count)



5 oz Refreshing Body Spray nice choise for you Yardley Morning Dew Perfume By Yardley London Refreshing...

5 Ounce

$19⁹⁹ ($4.00/Fl Oz)



Perfume for Women bring happy days into your life Yardley Morning Dew Perfume By Yardley London Refreshin...

$21⁴⁹ ($4.30/Fl Oz)



Swiss Army Morning Dew Women 3.4 oz EDT Spray

3.4 Ounce

$30⁰⁹ ($8.85/Ounce)



5 oz Refreshing Body Spray shape the fragrance of the body Yardley Morning Dew Perfume By Yardley London...

$19⁹⁹ ($4.00/Fl Oz)



Victorinox Morning Dew Eau de Toilette
100ml/3.4oz Spray
★★★★☆ ~ 9 ratings

$29⁹⁹ ($8.82 / Fl Oz)
✓prime

Get a $100 Gift Card instantly: Pay $0.00 upon approval for the
Amazon Prime Rewards Visa Card. No annual fee

May be available at a lower price from other sellers, potentially
without free Prime shipping

| Brand | Victorinox |
| Item Form | Spray |
| Item Weight | 3.4 Ounces |
| Item Volume | 100 Milliliters |

About this item
• sheer citrus and white flowers

Yardley Morning Dew by
Yardley London Refreshing
Body Spray 5 oz Women
**5 Ounce**
★★★★☆ ~ 2
$15⁰⁰ ($3.00/Fl Oz)

25. Amazon's reckless and willful disregard for the intellectual property rights of
others has been confirmed by multiple courts.  For example, in the CD of CA case
no. 2:20-cv-04310, Amazon recently resisted a preliminary injunction barring it
from selling products that infringe trademarks, arguing that it takes "measures to
ensure that its sales listings . . . will not appear again."  However, the Court
rejected this argument "because Amazon has demonstrated a proclivity for
breaking its promise."  The Court clarified the facts as follows:

Amazon explains that every time it has relisted the counterfeit masks, it has been
by some unfortunate mistake. The first time, it was because "Amazon's internal
settings that had removed its sales listing under the [Kinsley] ASIN had
inadvertently been reversed." (Mot. 4 (citing Calvert Decl. ¶ 10).) The second
time, it was because "when Amazon had previously removed its sales listing, the
individual setting the removal had unknowingly lacked sufficient authority to
permanently suppress the retail offer in the Amazon store." (Calvert Decl. ¶ 11.)
Inadvertent or not, Amazon's conduct establishes a likelihood that it will infringe
the SUNCOO mark again, be it via carelessness or otherwise. Because such
infringement would presumptively cause irreparable harm, the Court finds that
Kinsley has established a likelihood of irreparable harm in the absence of
preliminary relief.

26. In *Maglula v. Amazon*, VA ED Case 1:19-cv-01570, the court found that intellectual property rights owner Maglula "notified Amazon on multiple occasions, to no avail, that it [Amazon] was selling counterfeit products of inferior quality and ruining Maglula's business." The court went on to find that "the evidence of unlawful counterfeiting … is overwhelming," and concluded "this is simply not a case where Amazon can avoid liability." The court further found that Amazon improperly "destroyed accused products."

27. The facts in this case show that Amazon also disregarded Gabet's rights. As noted above, Gabet repeatedly informed Amazon if her trademark rights and registrations and identified infringing products. Amazon also knew or should have known that the products it sold were infringing counterfeits, in part because they resulted serious complaints from consumers that had purchased the counterfeits, such as:

- "I would never use something received this way on my body. I will never purchase again"
- "It's very stick and messy – discusting (sic)"
- "smells like a used ashtray"
- "I am appalled! This retailer should be banned!!"
- "Quality of product unusable"
- "smells horrible"

28. These complaints are antithetical to Gabet's values for her business, as she spent years of research in designing fragrances and perfecting the quality of products sold through Annie Oakley.

29. Despite these complaints over the counterfeit products that Amazon received, and despite having been informed that it was selling infringing products, Amazon did nothing investigate or curtail its own unlawful and infringing activity.

30. Most if not all of Gabet's trademark registrations became "incontestable" under the Lanham Act when the US Trademark Office accepted Declarations for them under 15 USC § 1065.

31. Annie Oakley has continuously used its trademarks mark in nearly every conceivable possible way. These uses include: displaying them labels for products, on small free sample bottles of products, in catalogs it has distributed to thousands of customers and dealers in every state in the US and multiple foreign countries, on advertising inserts placed into boxes shipped to dealers and customers containing other products, on shelf signs and "point of purchase cards" at Annie Oakley's store, on its webpage, on Facebook, on Instagram, in Internet ads, in Internet URLs, gift with purchase promotions and SEO (search engine optimization). Annie Oakley's use of the words comprising her trademarks Internet URLs allows Internet search engines like Google, Bing and DuckDuckGo to more efficiently direct Internet users that do text searches for those marks to Annie Oakley's webpages that offer Gabet's authentic products.

32.

----------------

33. Gabet exercises control over the quality of the products sold by Annie Oakley bearing her marks by virtue of the fact that she is the sole owner of Annie Oakley and exercises control over Annie Oakley. Annie Oakley's use of the marks inures to the benefit of Gabet.

34. Gabet's marks have become widely recognized for high quality, therapeutic grade essential oils, shampoos, hair conditioners, body soaps, and body powders, and other International Class 3 goods and have extensive goodwill. The marks are an indication of origin and of high quality of the products sold using the marks.

35. Amazon has manufactured, copied, reproduced, sold, offered for sale, publicly displayed, distributed, and/or imported products which infringe Gabet's marks.

36. Amazon is not, and never has been, authorized by Gabet use her marks or any mark confusingly similar to Gabet's marks.

37. The use by Amazon and third parties that sell products through Amazon of the Gabet's marks is likely to cause confusion and to deceive the public into believing that Defendants are affiliated or connected with, or are authorized or endorsed by Plaintiffs.

38. Plaintiffs' goodwill and reputation are likely to suffer due to consumer confusion between the Gabet's marks and the inferior counterfeit products Amazon peddles through amazon.com.

39. Amazon has actual knowledge of and are willfully infringing Gabet's rights in her marks, as evidenced by its use of the marks after it was put on notice of Gabet's trademarks. Gabet demanded in writing Amazon cease and desist its infringing

activity, but it failed do so and continue to offer, sell, distribute, and fulfill orders for products that infringe Gabet's marks.

40. Amazon is the world's most valuable retail company.[1] Its website is an online marketplace where Amazon retails its own products as well as those of more than one million third-party vendors, which include John Does 1-50. Both Amazon and these third-party vendors decide which products to sell, the means of shipping, and product pricing. For its part, Amazon lists the products on the Amazon Marketplace, collects order information from consumers, and processes payments. In exchange for these services, Amazon collects fees from each third-party vendor. In order to use Amazon's services, a third-party vendor must assent to Amazon's Services Business Solutions Agreement (the "Amazon Agreement"). The Amazon Agreement governs every step of the sales process.

41. Once a third-party vendor has assented to the Amazon Agreement, the vendor chooses which product or products it would like to sell using Amazon's website. Amazon also directly sells products its owns through Amazon "warehouse sales," and these products include those that infringe Gabet's trademarks.

42. Upon information and belief, when the third-party vendor has chosen a product that it wants to offer on Amazon's website, the vendor provides Amazon with a description of the product, including its brand, model, dimensions, and weight. Pursuant to the Amazon Agreement, the vendor must also provide Amazon with digital images of the product, as well as other information such as shipping and

---

[1] David Streitfeld, *Amazon Is Now Second to Cross $1 Trillion Line*, N.Y. TIMES, Sept. 5, 2018, at B1.

handling options, product availability, in-stock status, and any other information reasonably requested by Amazon.

43. Upon information and belief, based on this information, Amazon formats the product's listing on its website. This function, too, is provided for in the Amazon Agreement, by which Amazon retains the right in its sole discretion to determine the content, appearance, design, functionality, and all other aspects of the Services, including by redesigning, modifying, removing, or restricting access to any of them.

44. The third-party vendor can then choose which, if any, of Amazon's other services it will use in conjunction with listing its product on Amazon's website. For example, Amazon offers "Amazon Clicks," an advertising service in which Amazon highlights and promotes the vendor's product to customers. Amazon also offers a "Fulfillment by Amazon" service, in which it takes physical possession of third-party vendors' products and ships those products to consumers. Otherwise, the vendor itself is responsible for shipping products directly to consumers.

45. Upon information and belief, the listed price for the product is chosen by the third-party vendor, subject to one exception: Vendors may not charge more on Amazon than they charge in other sales channels. Nor, according to the Amazon Agreement, may third-party vendors offer inferior customer service or provide lower quality information about products than in other sales channels. To the extent that third-party vendors need to communicate with customers regarding their orders on Amazon, they must do so through the Amazon platform.

46. Upon information and belief, with these preliminaries completed, Amazon lists the product online and sales begin. As customers make purchases on Amazon's website, Amazon collects payment and delivers order information to the third-party vendor. At checkout, the customer can choose any shipping method offered by the third-party vendor, and any promises made by the vendor with respect to shipping date must be met. Amazon ensures compliance with this obligation by requiring the vendor to send Amazon shipping information for each order. In addition, vendors have a powerful interest in providing quality products and ensuring timely delivery, as Amazon allows shoppers to publicly rate the vendors and their products.

47. Upon information and belief, in exchange for its role in the transaction, Amazon collects two types of fees: one is a commission, typically between seven and fifteen percent of the overall sales price; the other is either a per-item or monthly fee, depending on the third-party vendor's preference. At least once every two weeks, Amazon remits all sales proceeds, minus fees, to the vendor. Pursuant to the Amazon Agreement, Amazon is classified as the third-party vendor's "agent for purposes of processing payments, refunds, and adjustments . . . receiving and holding Sales Proceeds on your behalf, remitting Sales Proceeds to Your Bank Account, charging your Credit Card, and paying Amazon and its Affiliates amounts you owe . . .."

48. Upon information and belief, throughout each step of the sales process, Amazon may at any time cease providing any or all of the Services at its sole discretion and without notice, including suspending, prohibiting, or removing any listing.

Amazon also retains other important privileges. For example, Amazon can require vendors to stop or cancel orders of any product. If Amazon determines that a vendor's actions or performance may result in risks to Amazon or third parties, it may in its sole discretion withhold any payments to the vendor. Furthermore, Amazon requires that its vendors release it and agree to indemnify, defend, and hold it harmless against any claim, loss, damage, settlement, cost, expense, or other liability.

49. Amazon also fulfills orders for infringing products as described here.

50. As a result of the aforesaid acts of Defendants, Plaintiffs have suffered and continue to suffer substantial damages and irreparable injury.

51. Plaintiffs have no adequate remedy at law and, unless Defendants are restrained and enjoined by this Court, said acts will continue to cause damage and irreparable injury to Plaintiffs and to their goodwill and business reputation.

52. Plaintiffs cannot ascertain the precise amount of their damages at this time.

53. Defendants were notified of their infringing activity, and demand has been made upon them to cease and desist, but they have nonetheless continued to infringe.

## COUNT I
### FEDERAL TRADEMARK INFRINGEMENT

54. The preceding allegations are incorporated herein by reference.

55. Notwithstanding Plaintiffs' right, title, and interest in connection with Gabet's marks identified herein, and the associated goodwill, Defendants have continued to sell and offer for sale confusingly-similar goods with actual and/or constructive knowledge and/or reckless disregard of Plaintiffs' rights.

56. On information and belief, Defendants have purposefully and willfully used Gabet's marks to confuse the public into believing their products were or are endorsed by or connected to Plaintiffs, and/or to misappropriate Plaintiffs' registered marks through their use of the Internet and through their selling of goods in interstate commerce.

57. Defendants' use of the infringing marks in selling and advertising their products is likely to cause confusion, mistake, and deception among consumers as to the source, affiliation, connection, association, origin, or approval of the goods and falsely suggest a sponsorship, connection, license, affiliation or association between Plaintiffs and Defendants, in violation of Lanham Act § 32, 15 U.S.C. § 1114.

58. Defendants' continued use of their infringing mark has injured Plaintiffs, and if permitted to continue, will further injure Plaintiffs by damaging their reputation and causing additional monetary damages.

59. Defendants' continued and knowing use of their infringing mark, or their reckless disregard, constitutes willful and/or intentional infringement and unfair competition, and this case is therefore exceptional under the Lanham Act.

60. Plaintiffs have no adequate remedy at law and, if Defendants are not enjoined, Plaintiffs will suffer substantial irreparable harm and injury to their goodwill and reputation.

61. Plaintiffs cannot ascertain the precise amount of their damages at this time, but they are entitled to recovery of monetary damages, including, but not limited to, actual damages, treble damages, reasonable attorneys' fees, interest and costs;

Plaintiffs are also entitled to recover Defendants' profits realized from their infringing activities.

62. Defendants have used infringing counterfeit marks, and Plaintiffs are entitled to recover three times the profits of Defendants and Plaintiffs' damages, attorney's fees, prejudgment interest, and statutory damages pursuant to 15 U.S.C. § 1117. Moreover, because Defendants' actions was willful, Plaintiffs are entitled to recover statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed" pursuant to 15 U.S.C. § 1117(c)(2).

## COUNT II
### FALSE DESIGNATION OF ORIGIN
### AND UNFAIR COMPETITION UNDER THE LANHAM ACT

63. The preceding allegations are incorporated herein by reference.

64. Defendants' actions in adopting, marketing, reproducing, publicly displaying, selling, offering to sell, and/or distributing infringing versions of Gabet's marks in interstate commerce without her consent constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a) and has caused, and continues to cause, a substantial effect on interstate commerce in that a likelihood of confusion, mistake, and deception exists in the minds of the consuming public as to the source, sponsorship, affiliation, and/or connection of Defendants' infringing goods.

65. By reason of the foregoing, Plaintiffs have been injured in an amount to be proven. In addition, as a result of Defendants' unlawful acts, Plaintiffs have suffered and will continue to suffer irreparable harm, and Plaintiffs have no

adequate remedy at law with respect to this injury. Unless the acts of Defendants are enjoined by the Court, Plaintiffs will continue to suffer such harm.

66. Defendants' actions have been knowing, intentional, wanton, and willful, or done with reckless disregard of Plaintiffs' rights, entitling Plaintiffs to damages, treble damages, ill-gotten profits, attorneys' fees, interest, statutory damages, and the costs of this action.

## COUNT IV
### UNFAIR COMPETITION OR USE OF ADVERTISING IDEA

67. The preceding allegations are incorporated herein by reference.

68. Plaintiffs are informed and believe, and thereon allege, that Defendants have been passing off their goods and services as those of Plaintiffs, and have been using Plaintiffs' intellectual property to promote their own goods and services.

69. Among the advertising ideas that Plaintiffs use to market products is to include the words that comprise their trademarks in URLs and social media account names, such that persons who search the internet using those words can be directed to Annie Oakley's webpages for products (the "Advertising Idea"). By use of the Advertising Idea, Internet users seeking products will learn more about Annie Oakley's products, including being directed to Annie Oakley's advertisements and webpages for its products.

70. Defendants have used Annie Oakley's Advertising Idea in their advertisements.

71. Defendants have incorporated the words comprising Gabet's trademarks into their URLs for products that would be of interest to persons looking for Plaintiffs' products.

72. Plaintiffs have been damaged by Defendants' unfair competition and use of

Plaintiffs' Advertising Idea.

## PRAYER FOR RELIEF

WHERERFORE, Plaintiffs RENEE GABET and ANNIE OAKLEY

ENTERPRISES, INC., pray for the entry of a judgment from this Court:

(1)     that Defendants and their officers, agents, servants, employees, licensees,

assignees, transferees, successors, attorneys, and those persons in active concert or

participation with them who receive actual notice of the Court's order, be preliminarily

and permanently enjoined from:

(a)     using Gabet's marks or any variation thereof in connection with the

promotion, marketing, advertising, and/or sales of International Class 3 goods or products

with which Plaintiffs have used the marks in a manner as to be likely to cause consumer

confusion;

(b)     using Gabet's marks or any variation thereof on the Internet, as a

webpage, domain name, in meta tags, or social media account names in a manner that

would cause confusion as to the source, sponsorship, or affiliation of Defendants;

(c)     diluting, blurring, passing off, or falsely designating the origin of any of

Gabet's marks and from further injuring Plaintiffs' goodwill and reputation;

(d)     engaging in unfair methods of competition with Plaintiffs;

(e)     doing any other act or thing likely to induce the belief that Defendants'

businesses, services, or products are in any way connected with, sponsored, affiliated,

licensed, or endorsed by Plaintiffs;

(2)     preliminary and permanently ordering and directing Defendants to take any and all action necessary to remove any and all of Defendants' references to Gabet's marks or any variation thereof in connection with their promotion, marketing, advertising, and/or sales of International Class 3 Goods or goods or products with which Plaintiffs have used the marks;

(3)     that Defendants, in accordance with 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon Plaintiffs, within thirty days after service of any injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

(4)     awarding Plaintiffs, in accordance with 15 U.S.C. § 1117, Defendants' profits, damages sustained by Plaintiffs, and three times such amounts as a result of Defendants' willful wrongful actions, including the infringement of federally-registered trademarks, infringement of common law rights, false designation of origin, trademark dilution, and employing unfair methods of competing with Plaintiffs;

(4)     awarding Plaintiffs, in accordance with 15 U.S.C. § 1117(c) and (d) statutory damages;

(5)     awarding Plaintiffs interest, costs, and reasonable attorneys' fees incurred in connection with this action; and

(6)     awarding Plaintiffs such other and further relief as this Court may deem to be just.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, as to all issues in this lawsuit.

## Verification

I hereby state under penalty of perjury of the United States that the factual allegations contained herein a true and correct to the best of my knowledge and belief, and that those allegations made upon information and belief I believe to be true.

1-19-2022

Renee Gabet

Respectfully submitted,

OVERHAUSER LAW OFFICES, LLC

s/Paul B. Overhauser
Paul B. Overhauser
18 E. Main St., Ste 202
Greenfield, IN  46140
(317) 467-9100
poverhauser@overhauser.com